1   EDGAR B. WASHBURN (#034038)
    CHRISTOPHER J. CARR (#184076)
2   SHAYE DIVELEY (#215602)
    STOEL RIVES LLP
3   111 Sutter Street, Suite 700
    San Francisco, CA  94104
4   Telephone:   (415) 617-8900
    Facsimile:   (415) 676-3000
5
    JOHN A. BEHNKE (#078720)
6   FRANK SHAW BACIK (#132565)
    CARTER, BEHNKE, OGLESBY & BACIK
7   169 Mason Street, Suite 300
    Post Office Box 720
8   Ukiah, CA  95482
    Telephone:   (707) 462-6694
9   Facsimile:   (707) 462-7839

10  Attorneys for Defendants
    THE PACIFIC LUMBER COMPANY and SCOTIA
11  PACIFIC COMPANY LLC

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15  ENVIRONMENTAL PROTECTION              Case No. C 01-2821 MHP
    INFORMATION CENTER, a non-profit corporation,
16                                        **MEMORANDUM IN SUPPORT
                   Plaintiff,             OF MOTION FOR
17                                        CERTIFICATION UNDER
            v.                            28 U.S.C. § 1292(b) FOR
18                                        IMMEDIATE APPEAL OF
    PACIFIC LUMBER COMPANY, a Delaware    ORDERS**
19  corporation; SCOTIA PACIFIC COMPANY LLC, a
    Delaware corporation; ENVIRONMENTAL   Date:    March 22, 2004
20  PROTECTION AGENCY; and CHRISTINE TODD Time:    2:00 p.m.
    WHITMAN,                              Ctrm:    15
21                                        Judge:   Hon. Marilyn Hall Patel
                   Defendants.
22

23

24

25

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NO. C 01-2821 MHP                         **MEMORANDUM IN SUPPORT OF
                                          MOTION FOR CERTIFICATION, ETC.**

SanFran-153584.9 0092236-00017

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................... 1

II.  ARGUMENT ......................................................................................... 4

    A.   Standard for Certification Under 28 U.S.C. § 1292(b) ........................ 4

    B.   All Three Rulings Are Appropriate for Certification .......................... 6

        1.   All Three Rulings Involve Controlling Issues of Law ................ 6

        2.   All Three Rulings Involve Issues as to Which There Is
             "Substantial Ground for Difference of Opinion" ..................... 9

             a.   June 6, 2003, Opinion ................................................ 9

                  (1)   33 U.S.C. § 1369(b)(1)(E) ................................. 10

                  (2)   33 U.S.C. § 1369(b)(1)(F) ................................. 12

             b.   October 14, 2003, Opinion ......................................... 12

             c.   January 23, 2004, Order ............................................ 14

        3.   Interlocutory Review of Any of the Three Rulings Is Not Only
             Likely to Materially Speed the Ultimate Termination of This
             Litigation, but Will Also Promote Judicial Economy and
             Efficiency More Generally for a Host of Reasons ................... 18

CONCLUSION ............................................................................................ 19

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

NO. C 01-2821 MHP

-i-

**MEMORANDUM IN SUPPORT OF
MOTION FOR CERTIFICATION, ETC.**

SanFran-153584.9 0092236-00017

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

American Mining Congress v. EPA,
   965 F.2d 759 (9th Cir. 1992)....................................................................................12, 16

Chiron Corp. v. Abbott Lab.,
   1996 U.S. Dist. LEXIS 317 (N.D. Cal. Jan. 3, 1996) ......................................2, 5, 9, 18

Envtl. Defense Ctr. v. EPA,
   344 F.3d 832 (9th Cir. 2003)...............................................................................passim

Fed. Deposit Ins. Corp. v. First Nat'l Bank of Wankesha,
   604 F. Supp. 616 (E.D. Wis. 1985).........................................................................6, 19

Fed. Deposit Ins. Corp. v. Jackson-Shaw Partners No. 46, Ltd.,
   1995 W.L. 594866 (N.D. Cal. Oct. 4, 1995)...............................................................5, 9

In re Cement Antitrust Litig.,
   673 F.2d 1020 (9th Cir. 1982)..................................................................................4, 6

Klinghoffer v. S.N.C. Achille Lauro,
   921 F.2d 21 (2nd Cir. 1990)........................................................................................5

League of Wilderness Defenders v. Forsgren,
   309 F.3d 1181 (9th Cir. 2002)...............................................................................13, 14

Longview Fibre Co. v. Rasmussen,
   980 F.2d 1307 (9th Cir. 1992).....................................................................................11

Lucero v. Regents of the Univ. of Cal.,
   1993 U.S. Dist. LEXIS 12208 (N.D. Cal. Aug. 23, 1993)...................................passim

Mateo v. M/S Kiso,
   805 F. Supp. 792 (N.D. Cal. 1992) ..........................................................................4, 5

Newton County Wildlife Ass'n v. Rogers,
   141 F.3d 803 (8th Cir. 1998)..................................................................................13, 14

NRDC v. EPA,
   656 F.2d 768 (D.C. Cir. 1981)....................................................................................12

NRDC v. EPA,
   673 F.2d 400 (D.C. Cir. 1982) ........................................................................10, 11, 12

NRDC v. EPA,
   966 F.2d 1292 (9th Cir. 1992).....................................................................................16

Oregon Natural Desert Ass'n v. Dombeck,
   172 F.3d 1092 (9th Cir. 1998).....................................................................................17

Ovando v. City of Los Angeles,
   92 F. Supp. 2d 1011 (C.D. Cal. 2000) ...............................................................5, 6, 9, 19

Owner-Operators Indep. Drivers Asso'n v. Skinner,
   1989 W.L. 110497 (N.D. Cal. Aug. 1, 1989), rev'd on other grounds, 931 F.2d
   582 (9th Cir. 1991)...............................................................................................6, 19

Shipping Corp. of India v. Am. Bureau of Shipping,
   752 F. Supp. 173 (S.D.N.Y. 1990)................................................................................5

Stoel Rives LLP
ATTORNEYS AT LAW
PORTLAND

NO. C 01-2821 MHP

-ii-

MEMORANDUM IN SUPPORT OF
MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

Shurance v. Planning Control Int'l, Inc.,
  839 F.2d 1347 (9th Cir. 1980)..................................................................5

Sierra Club v. Martin,
  71 F. Supp. 2d 1268 (N.D. Ga. 1999) ..............................................13, 14

Trustees for Alaska v. EPA,
  749 F.2d 549 (9th Cir. 1984)................................................................10

United States Rubber Co. v. Wright,
  359 F.2d 784 (9th Cir. 1966)..................................................................2

United States v. Woodbury,
  263 F.2d 784 (9th Cir. 1959)..................................................................4

Wells Fargo Bank v. Bourns, Inc.,
  860 F. Supp. 709 (N.D. Cal. 1994) ...................................................6, 19

## STATUTES, RULES & REGULATIONS

28 U.S.C. § 1292.............................................................................1, 4, 5

33 U.S.C. § 1311................................................................................15

33 U.S.C. § 1342..........................................................................15, 16

33 U.S.C. § 1362................................................................................17

33 U.S.C. § 1369..........................................................................6, 7, 9

40 C.F.R. § 122.26......................................................................15, 18

40 C.F.R. § 122.27................................................................................1

Fed. R. App. Proc. 5.............................................................................1

Fed. R. Civ. Proc. 12............................................................................1

## OTHER AUTHORITIES

55 Fed. Reg. 47,990 (Nov. 16, 1990).................................................15

55 Fed. Reg. 47,997 (Nov. 16, 1990).................................................15

64 Fed. Reg. 68,722 (Dec. 8, 1999)..............................................15, 16

64 Fed. Reg. 68,734 (Dec. 8, 1999)....................................................16

64 Fed. Reg. 68,736 (Dec. 8, 1999)....................................................16

General Permit for Discharges of Storm Water Associated With Industrial
  Activities Excluding Construction Activities, State Water Resources Control
  Board Water Quality Order No. 97-03-DWQ, available at
  http://www.swrcb.ca.gov/stormwtr/docs/induspmt.pdf......................................16

General Permit for Storm Water Discharges Associated With Construction
  Activity, State Water Resources Control Board Water Quality Order
  No. 99-08-DWQ, available at
  http://www.swrcb.ca.gov/stormwtr/docs/finalconstpermit120602.pdf..................16

General Permit for Storm Water Discharges From Small Municipal Separate
  Storm Sewer Systems, State Water Resources Control Board Water Quality
  Order No. 2003-005-DWQ, available at
  http://www.swrcb.ca.gov/stormwtr/docs/final_sm_ms4_fact_order.pdf.................16

Stoel Rives LLP
Attorneys At Law
Portland

NO. C 01-2821 MHP                    -iii-                    MEMORANDUM IN SUPPORT OF
                                                             MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

## I. INTRODUCTION

Defendants The Pacific Lumber Company and Scotia Pacific Company LLC (collectively "PALCO") seek to immediately appeal the three rulings of this Court rendered on dispositive motions in this case. Accordingly, PALCO moves this Court to append to its June 6, 2003, Opinion that it had jurisdiction to entertain EPIC's challenge to EPA's silvicultural point source regulation, 40 C.F.R. § 122.27,[1] to its October 14, 2003, Opinion narrowly construing that regulation contrary to EPA's own interpretation of it,[2] and to its January 23, 2004, Order that PALCO's silvicultural activities do not result in unregulated stormwater discharges,[3] the following language, which, under 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5(a)(3), will permit PALCO to seek the Ninth Circuit's permission for interlocutory appeal:

> The Court is of the opinion that this Order involves a controlling issue of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation.

The three rulings are closely related. In its June 6, 2003, Opinion, the Court denied PALCO's motion to dismiss "in part." June 6 Op. at 23. In its motion to dismiss, PALCO sought dismissal not only based on lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), but also pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that section 122.27, as consistently applied by EPA for more than 25 years, precludes regulation of PALCO's silvicultural operations as Clean Water Act ("CWA") "point sources." The Court did not rule on that second aspect of PALCO's motion in its June 23, 2003, ruling, but instead found that it had jurisdiction and requested "further briefing from all parties on the remaining issues in PALCO's Motion to Dismiss." Id. It was not until the Court issued its October 14, 2003, Opinion on the validity of section 122.27 that it addressed and resolved these "remaining issues" against PALCO by holding that section 122.27's list of nonpoint source silvicultural activities did not encompass the features and discharges alleged by EPIC in its First Amended Complaint to require NPDES permits. See Oct. 14 Op. at 21 ("The court notes . . . that this disposition does not effect the

---

[1] See Opinion on Motions to Dismiss entered June 6, 2003 ("June 6 Op.").
[2] See Opinion on Parties' Cross-Motions for Summary Judgment entered October 14, 2003 ("Oct. 14 Op.").
[3] See Order on Motion to Dismiss entered January 23, 2004 ("Jan. 23 Order").

Stoel Rives LLP
Attorneys At Law
Portland

NO. C 01-2821 MHP          -1-          MEMORANDUM IN SUPPORT OF
MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

legitimacy of EPIC's other claims for relief, and the court's interpretation of section 122.27 . . . governs those remaining claims.").  The Court's most recent ruling, its January 23, 2004 Order on PALCO's further Motion to Dismiss, is also closely related to the Court's October 14, 2003 ruling—answering the sole remaining legal question that governs the regulatory status of ditches and similar features alleged to discharge polluted stormwater from PALCO's lands.  That question is:  Assuming the features are "point sources" under the CWA and section 122.27, are stormwater discharges from those sources required to be permitted under CWA section 402?

PALCO does not make this request for certification lightly.  PALCO is cognizant of this Court's admonition that "[t]he use of interlocutory appeals is inappropriate 'merely to provide review of difficult rulings in hard cases.'"  Chiron Corp. v. Abbott Lab., 1996 U.S. Dist. LEXIS 317, *3 (N.D. Cal. Jan. 3, 1996) (quoting United States Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1966)).  But that admonition does not pertain to the opinions for which PALCO requests certification.  Each of those opinions readily satisfies the requirements for certification.

All three rulings involve controlling issues of law.  Reversal of any one of them would result in dismissal of EPIC's suit.  If the Ninth Circuit upholds as lawful (or finds no jurisdiction to review) the interpretation of section 122.27 urged by the EPA and PALCO (one that EPA has consistently maintained for more than 25 years)—reversing the Court's second ruling or the first and second rulings—summary judgment would be awarded for PALCO (and EPA) on EPIC's Third Claim for Relief.  Such a ruling also would require dismissal of all remaining claims (EPIC's First and Second Claims for Relief) for the reasons urged in PALCO's first motion to dismiss. If the Ninth Circuit finds that PALCO's silvicultural activities result in unregulated stormwater discharges reversing the Court's third ruling, EPIC's First and Second Claims for Relief would require dismissal and its Third Claim (challenging section 122.27) would become moot.

All three rulings involve issues as to which there is substantial ground for difference of opinion.  First, no other district court within the Ninth Circuit, nor the Ninth Circuit itself, has held that a district court may exercise jurisdiction over a challenge to an EPA regulation specifying features or activities that require NPDES permits and those that do not.  In fact, the

Stoel Rives LLP
ATTORNEYS AT LAW
PORTLAND

NO. C 01-2821 MHP                    -2-                    MEMORANDUM IN SUPPORT OF
                                                           MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

1   Ninth Circuit and courts of appeals outside it have exercised exclusive jurisdiction over such

2   challenges, and the Ninth Circuit has explicitly stated that section 122.27 may be subject to this

3   limited judicial review process.  Next, no court within the Ninth Circuit (or outside of it, for that

4   matter) has previously ruled that section 122.27 does not exclude forest roads and their associated

5   drainage features from "point source" status for purposes of NPDES permitting requirements.

6   Indeed, courts outside the Ninth Circuit have ruled just the opposite.  Finally, no court anywhere

7   has previously ruled that point source discharges of stormwater—even stormwater carrying

8   "pollutants"—are subject to NPDES permitting requirements where they have not been

9   designated by EPA for regulation pursuant to section 402(p) of the CWA.

10       Significantly, PALCO was not alone in making the arguments the Court rejected.  EPA,

11   the federal agency charged with administering the CWA and its NPDES program, agreed with

12   PALCO on each legal issue and submitted briefing and participated in the hearings giving rise to

13   all three rulings.

14       Finally, immediate appeal will quicken the resolution of this litigation and give the Ninth

15   Circuit an early opportunity to eliminate uncertainty for regulated entities and regulators

16   concerning NPDES permitting responsibilities and obligations on an issue of nationwide

17   importance.  As noted above, reversal of any one of the three rulings will lead to dismissal of

18   EPIC's suit.  Moreover, this case is in its infancy because of the parties' extended motion

19   practice.  Not even initial disclosures have been made.  Discovery will be lengthy and difficult.

20   The case is not susceptible of resolution by summary judgment.  There is no fast-approaching

21   trial date.  In addition, this case presents important issues of national significance deserving of

22   expeditious appellate review.  Their resolution now will confirm the regulated or unregulated

23   status of countless conveyances discharging stormwater within the Ninth Circuit—providing

24   greater certainty for the potentially regulated community and for the agencies that must issue

25   permits.  Indeed, as a result of the Court's second and third rulings (in the absence of early

26   appellate review), it can be expected that citizen plaintiffs will file suits to require every property

27   from which stormwater is discharged to obtain an NPDES permit.  One such plaintiff has already

28   relied on those rulings to argue that Vermont shopping center plaza tenants must obtain NPDES

permit coverage for stormwater discharges from their plaza's storm drain system.  See United

States' Amicus Curiae Brief in Conservation Law Foundation v. Hannaford Bros., Inc., et al.,

No. 2:03-CV-121 (D. Vt.) (attached as Exh. A to PALCO's Request for Judicial Notice ("RFJN")

filed concurrently herewith); see United States' Supplemental Memorandum Addressing EPIC

Decision in Conservation Law Foundation v. Hannaford Bros., Inc., et al., No. 2:03-CV-121 (D.

Vt.) ("U.S. Supplemental Memo.") (attached as Exh. B to PALCO's RFJN).  Resolution of these

issues now will also forestall confusion in the lower courts within the Ninth Circuit and the need

for later appellate review.

For all of these reasons, as explained more fully below, PALCO respectfully requests that

this Court certify its June 23, 2003, October 14, 2003, and January 23, 2004, rulings as

appropriate for interlocutory appeal.

## II.    ARGUMENT

### A.    STANDARD FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b)

Section 1292(b) permits a trial court to certify an order for immediate appeal when the

court is "of the opinion that such order involves a controlling issue of law as to which there is

substantial ground for difference of opinion and that an immediate appeal may materially advance

the ultimate termination of the litigation."  Thus, certification is appropriate if three conditions are

met.

First, the order to be certified must involve a "controlling issue of law."  28 U.S.C.

§ 1292(b); Mateo v. M/S Kiso, 805 F. Supp. 792, 799-800 (N.D. Cal. 1992).  "[A]ll that must be

shown in order for a question to be 'controlling' is that resolution of the issue on appeal could

materially affect the outcome of litigation in the district court."  In re Cement Antitrust Litig., 673

F.2d 1020, 1026 (9th Cir. 1982).  It is not necessary that "reversal of the district court's order

terminate the litigation."  Id. (citing United States v. Woodbury, 263 F.2d 784, 787 (9th Cir.

1959)).

Second, there must be a "substantial ground for difference of opinion."  28 U.S.C.

§ 1292(b).  This Court has observed that "the fact that [a] conclusion was neither easy nor

obvious is not reason enough to permit an appeal," and that certification is not commended when

Stoel Rives LLP
ATTORNEYS AT LAW
PORTLAND

NO. C 01-2821 MHP                    -4-         MEMORANDUM IN SUPPORT OF
                                                 MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

the "only substantial difference of opinion on [an] issue is that which exists between" the party seeking certification and the district court. <u>Chiron Corp.</u>, 1996 U.S. Dist. LEXIS 317, at *5. In order for certification to be appropriate, "the proponent of an appeal must make some greater showing." <u>Mateo</u>, 805 F. Supp. at 800. The requisite substantial ground for difference of opinion "may arise because the relevant legal issue is one of first impression." <u>Fed. Deposit Ins. Corp. v. Jackson-Shaw Partners No. 46, Ltd.</u>, 1995 W.L. 594866, *2 (N.D. Cal. Oct. 4, 1995) (citing <u>Klinghoffer v. S.N.C. Achille Lauro</u>, 921 F.2d 21, 24 (2nd Cir. 1990)); <u>see also</u> <u>Ovando v. City of Los Angeles</u>, 92 F. Supp. 2d 1011, 1025 (C.D. Cal. 2000) (substantial grounds for difference of opinion supported in part by fact that issues are ones of first impression); <u>Lucero v. Regents of the Univ. of Cal.</u>, 1993 U.S. Dist. LEXIS 12208, *46 (N.D. Cal. Aug. 23, 1993) (substantial grounds for difference of opinion supported by fact that two issues were matters of first impression within the Ninth Circuit while third issue was matter of first impression within and without the circuit). Substantial ground for difference of opinion may also arise where there is conflicting legal authority. <u>FDIC v. Jackson-Shaw Partners</u>, 1995 W.L. 594866, at *2 (citing <u>Shipping Corp. of India v. Am. Bureau of Shipping</u>, 752 F. Supp. 173, 175 (S.D.N.Y. 1990)); <u>Chiron Corp.</u>, 1996 U.S. Dist. LEXIS 317, at *5 (citing absence of "conflicting law" in denying certification).

Third, an interlocutory appeal must be "likely to materially speed the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "This factor is linked to whether an issue of law is 'controlling' in that the Court should consider the effect of a reversal by the Ninth Circuit on the management of the case." <u>Mateo</u>, 805 F. Supp. at 800. "If an interlocutory appeal would actually delay the conclusion of the litigation, the Court should not certify the appeal." <u>Id.</u> (citing <u>Shurance v. Planning Control Int'l, Inc.</u>, 839 F.2d 1347, 1348 (9th Cir. 1980)); <u>see also</u> <u>Chiron Corp.</u>, 1996 U.S. Dist. LEXIS 317, at *7 (denying certification and noting that an "appeal at this point might well result in delaying the resolution of this litigation" because the "issues have been dramatically narrowed and a relatively short trial is in sight"). By the same token, if, as a result of "the Ninth Circuit's interlocutory rulings . . . the parties and the [C]ourt may be spared [an] expensive and time consuming trial," certification is commended. <u>Lucero</u>, 1993 U.S. Dist.

Stoel Rives LLP
ATTORNEYS AT LAW
PORTLAND

NO. C 01-2821 MHP     -5-     MEMORANDUM IN SUPPORT OF MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

LEXIS 12208, at *46. It also counts in favor of certification if "interlocutory rulings would provide much needed guidance in a decidedly muddled area of federal law." Id. at *47. Similarly, certification is favored by the prospect of appeal "effectuat[ing] . . . uniformity in the application of the law." Ovando, 92 F. Supp. 2d at 1025. This is especially so where an appellate ruling will determine similar suits before other district courts and make future appeals of the issue unnecessary. Fed. Deposit Ins. Corp. v. First Nat'l Bank of Wankesha, 604 F. Supp. 616, 620 (E.D. Wis. 1985). Issues of national significance also command certification. Owner-Operators Indep. Drivers Asso'n v. Skinner, 1989 W.L. 110497, *16 (N.D. Cal. Aug. 1, 1989), rev'd on other grounds, 931 F.2d 582 (9th Cir. 1991); see also Wells Fargo Bank v. Bourns, Inc., 860 F. Supp. 709, 717 (N.D. Cal. 1994) (in making certification, finding "these are important [] issues deserving of Ninth Circuit review").

### B. ALL THREE RULINGS ARE APPROPRIATE FOR CERTIFICATION

#### 1. All Three Rulings Involve Controlling Issues of Law

In order for an issue to be "controlling," it is only necessary "that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." In re Cement Anti-Trust Litig., 673 F.2d at 1026. It is not necessary that "reversal of the district court's order terminate the litigation." Id. In this case, each one of the three rulings easily satisfies the "controlling issue of law" requirement, because reversal of any one of them would result in the dismissal of EPIC's suit.

The Court's June 6, 2003, Opinion denied motions to dismiss brought by EPA and PALCO on the ground that the district court lacked jurisdiction to consider EPIC's challenge to section 122.27 because CWA section 509(b), 33 U.S.C. § 1369(b), committed review of the validity of the regulation exclusively to the courts of appeals.[4] EPA and PALCO argued the

---

[4] PALCO also moved to dismiss EPIC's First and Second Claims for Relief pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that section 122.27, as consistently applied by EPA for more than 25 years, presented an insuperable impediment to the maintenance of EPIC's Clean Water Act citizen suit against PALCO. The Court denied PALCO's motion to dismiss only "in part." June 6 Op. at 23. It requested "further briefing from all parties on the remaining issues in PALCO's motion to dismiss" (id.)—vis., whether section 122.27 posed an impediment to EPIC's citizen suit against PALCO. The Court did not address—and resolve—this issue until it issued its Opinion on the Parties' Cross-Motions for Summary Judgment on October 14, 2003.

Stoel Rives LLP
ATTORNEYS AT LAW
PORTLAND

NO. C 01-2821 MHP                    -6-          MEMORANDUM IN SUPPORT OF
                                                  MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

subsections (E) and (F) of section 509(b)(1) committed exclusive jurisdiction to review NPDES permitting regulations to the courts of appeals by specifying that such courts are to review agency action

>    (E)    In approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of [the Act], [or]

>    (F)    In issuing or denying any permit under section 1342 of [the Act].

33 U.S.C. § 1369(b)(1)(E), (F).  The Court held that neither subsection (E) nor (F) applied to EPIC's challenge to section 122.27.  June 6 Op. at 10-18.  Reversal of the district court's ruling by the Ninth Circuit, based on a finding of exclusive jurisdiction in the courts of appeals over EPIC's challenge under either subsection (E) or (F), will deprive the district court of jurisdiction and require dismissal of EPIC's Third Claim for Relief challenging section 122.27.  In addition, if the Court agrees with PALCO and EPA that section 122.27 precludes "point source" regulation of silvicultural ditches and similar features, reversal of the Court's jurisdictional ruling would also require dismissal of EPIC's remaining claims.  Thus, reversal of the jurisdictional ruling may not only "materially affect the outcome of the litigation," but "terminate the litigation," necessarily making the question whether jurisdiction over EPIC's challenge to section 122.27 has been committed exclusively to the court of appeals by section 509(b) of the CWA a controlling issue of law.

The Court's October 14, 2003, Opinion on the validity of section 122.27 interpreted the regulation much more narrowly than EPA and PALCO urged and much more narrowly than the Court had interpreted the regulation denying EPIC's application for a TRO.  In opposing that application, PALCO interposed section 122.27 as a defense.  The Court denied EPIC's application based on the plain language of section 122.27, observing that the interpretation of the regulation urged by EPIC

>    would read out of it some of these activities that explicitly are excluded from point source silvicultural activities, because I don't care how you parse it out, you can't construct roads without doing some engaging in some of the activities that allow for runoff, natural runoff being the runoff of precipitation, et cetera, that would be discharged into various kinds of ditches and culverts and so forth.

>    You can't construct roads without creating those kinds of ditches and so forth, otherwise you would probably have far more serious erosion and problems with

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

NO. C 01-2821 MHP                    -7-          MEMORANDUM IN SUPPORT OF
                                                  MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

the property on which the road is being constructed.

Be far more degradation than we would see by creating what generally is created when you build a road.

And if, in fact, the intention was to exclude from this exclusion the creation of these kinds of things, ditches and culverts and so on and so forth, when one is doing road construction, related to silvicultural activities, then if the intention was to exclude them then that language should have been in there, and it's not there. And it is inherent in road construction.

Tr. at 38:5-24 (Exh. B to Decl. of Christopher J. Carr in Support of PALCO's Motion to Dismiss First Amended Complaint, filed Feb. 11, 2002). EPIC correctly characterized the Court's Opinion as holding "that the plain language of section 122.27 exempts all discharges associated with logging operations, even those from discrete conveyances such as a ditch, culvert, or gully." EPIC's Brief in Support of Motion for Summary Judgment on Third Claim for Relief at 7. In their summary judgment briefing, EPA and PALCO defended this plain language interpretation of section 122.27 as one consistent with (and, indeed, PALCO argued, required by) the CWA's text, structure and legislative history.

If the Ninth Circuit agrees with EPA and PALCO that the Court's earlier interpretation of section 122.27—as set forth above—is the correct one, and reverses the Court's summary judgment ruling giving the regulation a narrowing construction, then it must either review the lawfulness of the regulation or find a lack of jurisdiction to do so. A ruling in PALCO's favor on either issue—the lawfulness of section 122.27 or the Court's lack of jurisdiction—would require dismissal of EPIC's suit in its entirety. Thus, reversal of the Court's narrow interpretation of section 122.27 may not only "materially affect the outcome of the litigation," but "terminate the litigation," necessarily making the question of the appropriate interpretation of section 122.27 a controlling issue of law.

Reversal of the Court's Order of January 23, 2004, denying PALCO's second motion to dismiss, would also bring the litigation to an end. In its motion to dismiss, PALCO argued that, regardless of whether any of the forest roads and associated drainage features alleged by EPIC in its First Amended Complaint are "point sources" under the CWA's statutory definition of that term and the Court's interpretation of section 122.27, NPDES permits are not required for

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

NO. C 01-2821 MHP                    -8-          MEMORANDUM IN SUPPORT OF
                                                  MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

stormwater discharges from such "point sources" pursuant to section 402(p) of the CWA and EPA's Phase I and II regulations. If the Ninth Circuit agrees with this argument—and reverses this Court's Order—that ruling would require dismissal of EPIC's First and Second Claims for Relief, which allege unlawful stormwater discharges. It would also render moot EPIC's Third Claim for Relief challenging section 122.27, because review of section 122.27 would not alter the regulated status of the discharges. Thus, resolution of this issue on appeal, too, would not only "materially affect the outcome of the litigation," but would "terminate the litigation."

### 2. All Three Rulings Involve Issues as to Which There Is "Substantial Ground for Difference of Opinion"

The requisite substantial ground for difference of opinion may be established by showing the legal issue is one of first impression or that there is conflicting legal authority concerning the issue. FDIC v. Jackson-Shaw Partners, 1995 W.L. 594866, at *2; Ovando, 92 F. Supp. 2d at 1025; Lucero, 1993 U.S. Dist. LEXIS 12208, at *46; Chiron Corp., 1996 U.S. Dist. LEXIS 317, at *5. In this case, the "substantial ground for difference of opinion" criterion is readily satisfied for each of the three rulings.

### a. June 6, 2003, Opinion

The Court's June 6, 2003, Opinion finding it has jurisdiction to entertain EPIC's challenge to section 122.27 involves a legal issue—the scope of section 509(b) of the CWA—conflicts with decisions of the Ninth Circuit and other courts of appeals. The Court held that neither section 509(b)(1)(E) nor section 509(b)(1)(F) encompassed EPIC's challenge to the regulation. June 6 Op. at 10-18. Subsection (E) pertains to agency actions with respect to "any effluent limitation or other limitation." 33 U.S.C. § 1369(b)(1)(E). Subsection (F) pertains to agency actions with respect to "issuing or denying any permit under section 1342." Id. § 1369(b)(1)(F). Yet, as recently as September 2003, the Ninth Circuit ruled that section 509(b) grants it exclusive jurisdiction to review "EPA effluent and permitting regulations," including the EPA regulations designating which stormwater discharges will be subject to permitting. Envtl. Defense Ctr. v. EPA, 344 F.3d 832, 843 (9th Cir. 2003). In addition, the same opinion explicitly stated that section 122.27 may also be subject to the same process for limited judicial review, although that

Stoel Rives LLP
ATTORNEYS AT LAW
PORTLAND

NO. C 01-2821 MHP                    -9-                    MEMORANDUM IN SUPPORT OF
                                                            MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

case did not require decision of the issue. Id. at 861-62.

**(1)      33 U.S.C. § 1369(b)(1)(E)**

In rejecting EPA and PALCO's arguments based on subsection (E), the Court acknowledged that "Defendants present a strong argument," but nonetheless found "that the nonpoint source provision of the silvicultural regulation is not an 'effluent limitation or other limitation' under section 301." June 6 Op. at 15. This statement is important for two reasons: first, because it characterized Defendants' argument as "strong" and, second, because it shows the Court elided the first sentence of section 122.27(b)(1), looking only to the sentence that it calls the "nonpoint source provision," rather than to the regulation as a whole, in considering whether it had jurisdiction.

PALCO recognizes that the Court's acknowledgment that an argument that failed to persuade it is a "strong" one does not automatically equate to the requisite "substantial ground for difference of opinion." However, PALCO believes that in this instance, where the strength of the argument is based on case law both from the Ninth Circuit and outside it, the Court's acknowledgment supports a finding that the requisite "substantial ground for difference of opinion" exists.

The Court's ruling conflicts with NRDC v. EPA, 673 F.2d 400 (D.C. Cir. 1982), and Trustees for Alaska v. EPA, 749 F.2d 549 (9th Cir. 1984). Those cases held that the EPA regulations under challenge were subject to exclusive review by the courts of appeals pursuant to section 509(b) of the CWA. In both cases, the regulations under challenge were a part of EPA's Consolidated Permit Regulations ("CPRs"). This Court rejected EPA and PALCO's arguments that EPA's inclusion of the silvicultural point source regulation in the re-promulgation of the CPRs means that it, too, is an "effluent limitation or other limitation" under section 301. In so doing, the Court gave NRDC and Trustees for Alaska an unduly cramped view. Indeed, the Court recognized that Trustees for Alaska "could be read to stand for the proposition that all regulations codified as CPRs were subject to appellate review under section 509(b)(1)(B) as limitations under section 301," but rejected this reading on the ground that it "would be contrary to the narrow interpretation of the same jurisdictional provision later counseled by the Ninth Circuit in

Stoel Rives LLP
Attorneys At Law
Portland

NO. C 01-2821 MHP                    -10-                    MEMORANDUM IN SUPPORT OF
                                                            MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

[Longview Fibre Co. v. Rasmussen, 980 F.2d 1307 (9th Cir. 1992)]." June 6 Op. at 16. While the Ninth Circuit in Longview Fibre did comment upon the "specificity and precision" of section 509, and noted arguments against a liberal construction of its grant of exclusive appellate review, the Ninth Circuit, at the same time, did not cast a negative light on its earlier decision in Trustees for Alaska or call into question the policy reasons for exclusive appellate review noted in that decision and the NRDC case upon which Trustees for Alaska relied. Longview Fibre, 980 F.2d at 1313-14. Those policy reasons include the desirability of national uniformity, the lack of a need for the fact-finding with respect to which district courts enjoy an advantage compared to courts of appeals, and the need to avoid having a court of appeals review individual permit decisions, but not be able to review the regulations pursuant to which the individual permit decision was taken. NRDC, 673 F.2d at 405-06. This Court itself noted that a rejection of these policy reasons favoring exclusive appellate review "would be in tension with many decisions on section 509(b)(1), which have over the years tended to broaden the scope of circuit court jurisdiction." June 6 Op. at 17 n.16. But that is precisely the import of its exercise of jurisdiction over EPIC's challenge to section 122.27.

Furthermore, by separating out the "nonpoint source provision" of section 122.27 from the regulation as a whole, the Court inaccurately characterized the regulation as not providing a "limitation" on timber operations. See, e.g., June 6 Op. at 16 ("[T]he provision ensures that permit procedures will not apply to these sources."); id. ("Defining a silvicultural source as a nonpoint source does not restrict industry by limiting pollution from point sources or requiring permits to be issued in a stricter fashion."). While the Court acknowledged that "courts have broadly construed the definition of 'effluent limitation or other limitation,'" it nonetheless rejected a broad construction in this case, simply because there have been no cases posing the precise question whether section 122.27 provides an "effluent limitation or other limitation." June 6 Op. at 16-17.

The Court's refusal to find EPIC's challenge to section 122.27 within the exclusive jurisdiction of the courts of appeals based on section 509(b)(1)(E) of the CWA is in conflict with cases from the Ninth Circuit and the D.C. Circuit.

Stoel Rives LLP
Attorneys At Law
Portland

NO. C 01-2821 MHP

-11-

MEMORANDUM IN SUPPORT OF
MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

**(2) 33 U.S.C. § 1369(b)(1)(F)**

The Court's June 6, 2003, Opinion also held that subsection (F) of section 509(b)(1) did not encompass EPIC's challenge to section 122.27. June 6 Op. at 10-14. In so doing, the Court gave an inappropriately narrow reading to the scope of subsection (F) as described by the Ninth Circuit in two cases that reviewed EPA's Phase I stormwater regulations, <u>American Mining Congress v. EPA</u>, 965 F.2d 759 (9th Cir. 1992), and <u>NRDC v. EPA</u>, 966 F.2d 1292 (9th Cir. 1992). Both of those cases relied on a D.C. Circuit case warning against the "perverse situation" in which the court "will be able to review the grant or denial of the permit, but will be without authority to review directly the regulations on which the permit is based." <u>NRDC v. EPA</u>, 656 F.2d 768, 775 (D.C. Cir. 1981). The Court reasoned that EPIC's challenge to section 122.27 was different from the challenges at issue in the two Ninth Circuit cases, because in those cases the regulations in issue pertained to already-established point sources and were not concerned, as section 122.27 is, with the definition of point and nonpoint sources. The Court opined that, in this case, the Ninth Circuit would never be confronted with the paradoxical situation of having to rule on the issuance or denial of a permit for features listed as "nonpoint sources" by section 122.27, while not having exclusive authority to review the validity of section 122.27 itself. June 6 Op. at 13. Of course, by assuming jurisdiction and ruling on the validity of section 122.27, this Court has set up the Ninth Circuit to have to rule on the issuance or denial of permits for "silvicultural point sources," while having been deprived by this Court of the opportunity to determine the scope of that term, and what features it encompasses (and does *not* encompass), in the first instance.

This result is in conflict with cases from the Ninth Circuit and the D.C. Circuit.

**b. October 14, 2003, Opinion**

The October 14, 2003, Opinion narrowly interpreting section 122.27 involves an issue of first impression in two respects. First, while numerous courts have given effect to and applied section 122.27, none has purported to rule on its validity. Second, no court, in applying section 122.27 to forest roads and their associated drainage features, has ever rejected EPA's long-standing interpretation of the regulation and held that section 122.27 does not operate to exclude

Stoel Rives LLP
ATTORNEYS AT LAW
PORTLAND

NO. C 01-2821 MHP                    -12-                    MEMORANDUM IN SUPPORT OF
                                                            MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

1  them from NPDES permitting requirements.

2         Early in this case, the Court itself recognized that in considering EPIC's challenge to

3  section 122.27 it would be deciding an issue of first impression. In ruling on the motions to

4  dismiss brought by EPA and PALCO on the grounds that the Court lacked jurisdiction to review

5  the validity of section 122.27, this Court explained that "section 122.27 is a broad, policy-

6  oriented rule, and that the outcome of this action has nationwide implications." June 6 Op. at 17.

7  Thus, the Court's October 14, 2003, Opinion, considering the validity of section 122.27, is the

8  first of its kind.

9         The Court's October 14, 2003, Opinion also departs from the decisions of other courts to

10 hold that section 122.27 does not define forest roads and their associated drainage features as

11 nonpoint sources. EPIC concedes as much, stating in a press release concerning the ruling that

12 "[t]his is the first court ruling in the nation to apply the Clean Water Act to this type of logging

13 pollution." Press Release, EPIC, "Federal Court Reigns in Logging Pollution: Water Pollution

14 from Logging Operations Will Require Federal Permits" (Oct. 15, 2003) (attached as Exh. A to

15 the Declaration of Christopher J. Carr ("Carr Decl."), filed concurrently herewith). Numerous

16 articles from specialized legal and environmental newsletters and reporters have echoed EPIC's

17 observation that the decision is the first to find such features to be "point sources" (see, e.g.,

18 "Landmark Ruling Says Logging Runoff Subject to Clean Water Act," Water Policy Report

19 (Oct. 20, 2003) at 13-14 [attached as Exh. B to Carr Decl.]) while other courts have found

20 precisely the opposite on the basis of section 122.27. See Newton County Wildlife Ass'n v.

21 Rogers, 141 F.3d 803, 810 (8th Cir. 1998); Sierra Club v. Martin, 71 F. Supp. 2d 1268, 1305-07

22 (N.D. Ga. 1999).

23        The Ninth Circuit's decision in League of Wilderness Defenders v. Forsgren, 309 F.3d

24 1181 (9th Cir. 2002), did not decide whether forest roads and their associated drainage features

25 are encompassed by section 122.27 and, therefore, whether or not stormwater discharges from

26 them require NPDES permits. Rather, it dealt with the very different circumstance of pesticide

27 spraying from airplanes directly over covered waters and held that such spraying required an

28 NPDES permit. The case was not about stormwater discharges, let alone stormwater discharges

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

NO. C 01-2821 MHP          -13-          MEMORANDUM IN SUPPORT OF
                                         MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

from forest roads and their associated drainage features. Moreover, in <u>Forsgren</u>, the EPA's

interpretation of the CWA, as reflected in section 122.27 and the agency's interpretation of that

regulation, were not supported by the contemporaneous rulemaking history and consistent agency

interpretation dating back more than a quarter of a century. Instead, the government could only

point to "two one-paragraph letters written by the EPA (in response to Forest Service requests)

and a brief passage in an EPA guidance document that indicate that no NPDES permit is required

for . . . aerial spraying." <u>League of Wilderness Defenders</u>, 309 F.3d at 1188-89. The Ninth

Circuit observed that the letters "provide no analysis and do not even mention [section 122.27]."

<u>Id.</u> at 1189. The guidance document, the Ninth Circuit noted, was not a guidance document for

silvicultural activities, contained no analysis of whether aerial spraying was excluded from

NPDES regulation, and was issued at the time the government's appeal was pending. <u>Id.</u> What is

more, the court explained, "these post hoc informal documents provide no rebuttal to the

contemporaneous explanation of the regulation published through notice-and-comment

rulemaking in the Federal Register." <u>Id.</u> at 1190. Accordingly, the documents purportedly

embodying EPA's interpretation were not entitled to any deference at all. <u>Id.</u> at 1189-90. In the

case before this Court, in contrast, EPA's interpretation of the CWA reflected in section 122.27,

its contemporaneous explanations of what that regulation means contained in formal rulemakings,

and its consistent treatment of the scope of that regulation spanning more than a quarter century,

should have been accorded full-blown <u>Chevron</u> deference. <u>See</u> PALCO's Brief in Support of

Motion for Summary Judgment at 16-23.

Not only did <u>Forsgren</u> not decide the scope of section 122.27 as it applies to forest roads

and their associated drainage features, but courts outside the Ninth Circuit have held that the

regulation encompasses, and thereby exempts from NPDES permitting requirements, forest roads

and their associated drainage features, regardless of whether they satisfy the definition of "point

source" under the CWA. <u>See</u> <u>Newton County Wildlife Ass'n</u>, 141 F.3d at 810; <u>Sierra Club</u>, 71 F.

Supp. 2d at 1305-07.

### c. January 23, 2004, Order

The Court's January 23, 2004 Order not only reiterates the Court's October 14, 2003,

Stoel Rives LLP
Attorneys At Law
Portland

NO. C 01-2821 MHP

-14-

MEMORANDUM IN SUPPORT OF
MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

Opinion—again, the first of its kind anywhere in the nation—that forest roads and their associated drainage features are "point sources" notwithstanding section 122.27, but contains two related and further holdings that, as far as we are able to discern, are also unique.

The first is that section 402(p) stormwater permitting requirements only apply to discharges of stormwater that contain no pollutants that have been picked up by virtue of the rainwater moving over the surface of the ground—while stormwater discharges containing "pollutants" remain subject to an absolute permitting requirement under CWA sections 301(a) and 402(a). Jan. 23 Order at 11-12. The Court opines that this result is dictated by section 402(p)(1)'s specification that

> Prior to October 1, 1994, the Administrator or the state (in the case of a permit program approved under this section) shall not require a permit under this section for *discharges composed entirely of stormwater*.

33 U.S.C. § 1342(p)(1) (emphasis added). This holding contradicts EPA's entire system of regulating stormwater discharges, as well as Ninth Circuit precedent specifically upholding that system. See 40 C.F.R. § 122.26 (specifying stormwater discharges that require NPDES permits); Envtl. Defense Ctr., 344 F.3d 832 (discussed below).

EPA has established a comprehensive system for regulating stormwater discharges in its Phase I and II rulemakings implementing section 402(p). See 55 Fed. Reg. 47,990 (Nov. 16, 1990) (Phase I rulemaking) and 64 Fed. Reg. 68,722 (Dec. 8, 1999) (Phase II rulemaking). EPA made clear in defining "storm water" in the first of these regulations that "the entire thrust of today's regulation is to control *pollutants* that enter receiving water *from storm water* conveyances." 55 Fed. Reg. 47,990, 47,997 (Nov. 16, 1990) (emphasis added). Indeed, the statute itself makes clear that CWA permitting requirements pertain only to "the discharge of any *pollutant*." See 33 U.S.C. § 1311(a), 1342(a) (emphasis added). No other court in the nation has construed section 402(p) to apply only to pure rainwater.

In accordance with Congress's 1987 mandate to establish a phased, focused approach to stormwater sources of pollutants, EPA's Phase I permitting program focused on certain industrial and large municipal sources. See 33 U.S.C. § 1342(p)(1)-(2). Then, after conducting studies of all remaining stormwater discharges and "the nature and extent of pollutants in such discharges,"

Stoel Rives LLP
ATTORNEYS AT LAW
PORTLAND

as required under section 402(p)(5), EPA issued its Phase II regulations designating specific

categories of additional stormwater discharges to be regulated.  See id. § 1342(p)(5); 64 Fed. Reg.

68,722, 68,734 (Dec. 8, 1999) (designating small construction sites and small municipal

stormwater discharges).  EPA explained then that "*[o]ther storm water discharges* from

unregulated industrial, commercial, and residential sources *will not be subject to the NPDES*

*permit requirements* unless a permitting authority determines on a case-by-case basis . . . that

regulatory controls are needed to protect water quality."  64 Fed. Reg. 68,736 (Dec. 8, 1999)

(emphasis added).  Thus, all of the stormwater discharges identified by Congress for regulation in

Phase I, and evaluated by EPA for potential regulation in Phase II, were identified for regulation

precisely because they were significant sources of "pollutants"—not pure, unpolluted water.[5]

EPA's Phase I and Phase II rulemakings were largely, and in pertinent part, upheld by the

Ninth Circuit in NRDC v. EPA, 966 F.2d 1292 (9th Cir. 1992), American Mining Congress, 965

F.2d 759, and Environmental Defense Center, 344 F.3d 832.  In the latter case, the Ninth Circuit

specifically upheld EPA's decision not to designate "a variety of other point-source discharge

categories . . . very similar, or identical to regulated stormwater discharges associated with

industrial activity" even though environmental petitioners cited record evidence that these

additional, unregulated stormwater discharges were "highly polluting" and EPA's own findings

that they may cause "adverse water quality impacts."  344 F.3d at 858-60.  The Court's January

23 Order ruling that all stormwater discharges containing "pollutants" must be permitted is at

_____

[5] California's broadly applicable general permits for stormwater discharges, including those
associated with industrial and construction activities and municipal storm sewers, plainly
contemplate that the authorized stormwater discharges will contain various pollutants and
contaminants.  See General Permit for Discharges of Storm Water Associated With Industrial
Activities Excluding Construction Activities, State Water Resources Control Board ("SWRCB")
Water Quality Order No. 97-03-DWQ, available at
http://www.swrcb.ca.gov/stormwtr/docs/induspmt.pdf; General Permit for Storm Water
Discharges Associated With Construction Activity, SWRCB Water Quality Order
No. 99-08-DWQ, available at
http://www.swrcb.ca.gov/stormwtr/docs/finalconstpermit120602.pdf; General Permit for Storm
Water Discharges From Small Municipal Separate Storm Sewer Systems, SWRCB Order No.
2003-005-DWQ, available at
http://www.swrcb.ca.gov/stormwtr/docs/final_sm_ms4_fact_order.pdf.  By interpreting the
statutory phrase "composed entirely of stormwater" to mean pure rainwater, the Court's decision
threatens to undermine the entire apparatus established by EPA and states such as California for
regulating stormwater discharges from industrial, municipal, or other sources.

Stoel Rives LLP
ATTORNEYS AT LAW
PORTLAND

NO. C 01-2821 MHP                    -16-                    MEMORANDUM IN SUPPORT OF
                                                            MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

odds with this Ninth Circuit precedent.[6]

The second unique holding contained in the Court's January 23, 2004 Order is that section 402(p) only applies to stormwater discharges that were not already regulated at the time section 402(p) was enacted in 1987. Jan. 23 Order at 12-13. Put another way, the Court holds that section 402(p) established new permitting authority for previously unregulated sources, but did not alter the requirements applicable to discharges that were regulated or that should have been regulated under the statute as of 1987. Id.

There are two possible interpretations of the "currently unregulated stormwater discharges" (Envtl. Defense Ctr., 345 F.3d at 873) subject to section 402(p) stormwater permitting requirements under the Court's ruling. The first is that they are stormwater discharges from nonpoint sources. Jan. 23 Order at 13. But this would contradict the statute (and Ninth Circuit precedent), because section 402 in its entirety—and indeed the discharge prohibition of section 301(a)—pertains only to "point source" discharges. See 33 U.S.C. §§ 1362(12), (16) (definition of "discharge" and "discharge of a pollutant"); Oregon Natural Desert Ass'n v. Dombeck, 172 F.3d 1092, 1096-99 (9th Cir. 1998) (finding that CWA term "discharge" is a term of art encompassing only "point sources" of pollutants).

The second possible interpretation of the Court's holding is that the "currently unregulated stormwater discharges" are point source discharges comprised of pure rainwater but no "pollutants." On this account, it would seem, Congress added section 402(p) in 1987 to provide for new NPDES regulation of stormwater discharges "composed entirely of stormwater"—which the Court interprets to mean pure rainwater—while leaving all stormwater discharges containing pollutants subject to permitting based on the general authority of section 402(a).

However, this construction contradicts the same statutory provisions, EPA regulations, and Ninth Circuit decisions discussed above that demonstrate the entire stormwater regulatory

---

[6] As demonstrated by the attached amicus brief by the United States in CWA citizen suit litigation pending in the District of Vermont, under the Court's reasoning "it would appear that ALL [stormwater] sources would now be required to be permitted and would be considered to be in violation of section 301(a) until they obtain such permits"—a result that "flies in the face of section 402(p) and of Ninth Circuit case law." U.S. Supplemental Memo. at 7-8 (attached as Exh. B to PALCO's RFJN).

program is aimed at stormwater discharges of "pollutants." No court in the nation has similarly construed the 1987 amendments and section 402(p) to establish new authority to regulate discharges of previously unregulated pollutant-free rainwater.

In its briefing in <u>Conservation Law Foundation v. Hannaford Bros., Inc.</u>, the United States explains that the 1987 amendments did not establish authority to regulate additional discharges, but in fact created new authority for EPA to *not* regulate all point source discharges of polluted stormwater. U.S. Supplemental Memo. at 4-8 (attached as Exh. B to PALCO's RFJN). While all point source discharges of stormwater previously had been deemed by the courts to require permits, the enactment of section 402(p) in 1987 authorized a two-part, focused program that would require permits only for sources found by Congress and EPA to have the most significant environmental impacts. <u>Id.</u> at 5-6 (discussing legislative history). As implemented in EPA's Phase II regulations and as explicitly upheld by the Ninth Circuit, this newly authorized category of "currently unregulated stormwater discharges" would remain—and still remain—subject to permitting requirements only on a case-by-case basis where EPA or the State permitting agency make specific findings about the need for such regulation. <u>See</u> <u>Envtl. Defense Ctr.</u>, 344 F.2d at 873-74; 40 C.F.R. § 122.26(a)(9)(i)(C)-(D).

**3. Interlocutory Review of Any of the Three Rulings Is Not Only Likely to Materially Speed the Ultimate Termination of This Litigation, but Will Also Promote Judicial Economy and Efficiency More Generally for a Host of Reasons**

As discussed above, reversal of any of the three rulings will result in this litigation quickly coming to an end. Given the status of this case, it could not be seriously argued that interlocutory appeal would delay its conclusion. No initial disclosures have been made; no discovery has been had; the issues in this case are not susceptible of resolution on summary judgment; and there is no fast approaching trial date. Moreover, this is not a case where the "issues have been dramatically narrowed and a relatively short trial is in sight." <u>Chiron Corp.</u>, 1996 U.S. Dist. LEXIS 317, at *7. Rather, a trial will be long and hard fought, because EPIC will have to establish myriad factual and legal issues. Accordingly, "the parties and the [C]ourt may be spared [an] expensive and time consuming trial" if interlocutory appeal is taken. <u>Lucero</u>, 1993 U.S. Dist. LEXIS 12208, at

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

NO. C 01-2821 MHP     -18-     MEMORANDUM IN SUPPORT OF
MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017

*46.

Beyond the cost and time savings that may result from an interlocutory appeal, it can be expected that CWA citizen suits will be brought against other timberland owners—and, indeed, countless other landowners discharging stormwater from conveyances without NPDES permit authorization—within the Ninth Circuit as a result of this Court's rulings. Given the novelty of the Court's rulings—and the existence of contrary rulings from other courts—interlocutory appeal would enable the Ninth Circuit to provide guidance in this area of the law and ensure its uniform application. <u>Lucero</u>, 1993 U.S. Dist. LEXIS 12208, at *46; <u>Ovando</u>, 92 F. Supp. 2d at 1025. In addition to providing guidance to lower courts, review by the Ninth Circuit at this point would provide much needed guidance to the potentially regulated and regulators alike. A Ninth Circuit ruling on whether EPIC's suit against PALCO can be maintained would enable similar suits to be resolved at an early stage, saving district court resources and making further appeals to the Ninth Circuit unnecessary. <u>FDIC v. First Nat'l Bank</u>, 604 F. Supp. at 620. Finally, this case presents issues of national significance that are surely deserving of Ninth Circuit review. <u>Owner-Operators Indep. Drivers Ass'n</u>, 1989 W.L. 110497, at *16; <u>Wells Fargo Bank</u>, 860 F. Supp. at 717.

## <u>CONCLUSION</u>

For all the foregoing reasons, PALCO respectfully requests the Court to certify its October 14, 2003, January 23, 2004, and January 23, 2004, rulings for immediate appeal.

DATED:  February 12, 2004                          STOEL RIVES LLP


By:_____/s/ Christopher J. Carr_____
    CHRISTOPHER J. CARR
    Attorneys for Defendants
    THE PACIFIC LUMBER COMPANY and
    SCOTIA PACIFIC COMPANY LLC

Stoel Rives LLP
Attorneys At Law
Portland

NO. C 01-2821 MHP                          -19-                          MEMORANDUM IN SUPPORT OF
                                                                          MOTION FOR CERTIFICATION, ETC.

SanFran-153584.9 0092236-00017