MICHAEL R. LOZEAU (CA Bar No. 142893)
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel: (510) 749-9102
Fax: (510) 749-9103
E-mail: mrlozeau@lozeaulaw.com

SHARON E. DUGGAN (CA Bar No. 105108)
370 Grand Avenue, Suite 5
Oakland, CA 94610
Tel: (510) 271-0825
Fax: (510) 271-0829
E-mail: foxsduggan@aol.com

Deborah A. Sivas (CA Bar No. 135446)
Holly D. Gordon (CA Bar No. 226888)
STANFORD LAW SCHOOL
ENVIRONMENTAL LAW CLINIC
559 Nathan Abbott Way
Stanford, California 94305-8620
Tel: (650) 723-0325
Fax: (650) 725-8509
dsivas@stanford.edu

Attorneys for Plaintiff
Environmental Protection Information Center

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENVIRONMENTAL PROTECTION INFORMATION CENTER,<br><br>   Plaintiff,<br> v.<br><br>PACIFIC LUMBER COMPANY; SCOTIA PACIFIC COMPANY, LLC, and; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>   Defendants. | Case No.: C01-2821 MHP<br><br>SUPPLEMENTAL DECLARATION OF PAUL MASON<br><br>Date: August 21, 2006<br>Time: 2:00 p.m.<br>Courtroom: 15 |

I, Paul Mason, do declare and if called as a witness would testify as follows:

1. I am over the age of 18 and a resident of Yolo County.

2. I am a member of the Environmental Protection Information Center. In also serve on the group's board of directors. I have made myself available as a designated standing witness for EPIC in the case the group is bringing against Pacific Lumber Company and Scotia Pacific Company, LLC (collectively "Pacific Lumber") under the federal Clean Water Act.

3. I have previously testified at a deposition conducted for this case on February 28, 2006. This declaration supplements my previous deposition testimony

4. Although I currently reside in the City of West Sacramento, I continue to have strong ties to Humboldt County and spend time there on a regular basis. I continue to be a member of EPIC's Board of Directors, which requires my periodic presence in southern Humboldt County. I also have ongoing social relationships in Humboldt County, and continue to travel to the region on an approximately monthly basis. I continue to enjoy periodically visiting Humboldt Redwoods State Park and to recreate and otherwise enjoy and view Bear Creek where it flows into the Eel River. I intend to visit there again in September of this year.

5. Pacific Lumber's failure to apply for and obtain a National Pollutant Discharge Elimination System permit for point source discharges from its Bear Creek operations has prevented EPIC and myself from obtaining detailed information about Pacific Lumber's pollutant discharges in that creek, including sediment erosion from its unpaved roads to Bear Creek, that is essential to EPIC or myself to devise strategies and take actions that would lead to reductions of pollutant discharges by Pacific Lumber in Bear Creek.

6. EPIC's program has been focused on Pacific Lumber's logging-related activities, including the company's water quality impacts, for many years. Many of EPIC's members join the organization because they are concerned about Pacific Lumber's polluting and ecosystem disruptive activities. Since at least the spring of 1997, subsequent to a very large mass-wasting event in Bear Creek, EPIC has focused significant resources on Bear Creek, educating EPIC's members, participating in agency proceedings specifically applicable to Bear Creek and participating in litigation to address

water quality and aquatic habitat degradation issues within the Bear Creek watershed. In furtherance of educating its members, EPIC regularly interacts with the regulatory agencies charged with protecting water quality in Humboldt County, including the Regional Water Quality Control Board, North Coast Region ("Regional Board"). The Regional Board is the primary agency charged with issuing water pollution control permits under both state and federal law, including specifically NPDES permits under the Clean Water Act. EPIC has requested and reviewed documents at the Regional Board obtained by that agency pursuant to the requirements of NPDES permits. EPIC has requested and reviewed numerous documents at the Regional Board relating to Pacific Lumber's discharges of sediment in Bear Creek and other watersheds. Despite actively seeking out information about Pacific Lumber pollution within Bear Creek, EPIC has been unable to obtain any documents that would indicate whether or not Pacific Lumber is taking steps necessary to reduce point source sediment discharges from its logging operations in Bear Creek to an extent that pollutants harmful to EPIC's members will cease. In the fall of last year, EPIC did receive a number of documents prepared by Pacific Lumber once it had enrolled under California's General Industrial Stormwater Permit. Review of those documents gives EPIC great doubt that appropriate measures and adequate monitoring systems are in place even under the General Permit. Despite those recent documents, but for this litigation, EPIC would still not know of the extent of point source discharges by Pacific Lumber in the watershed.

7. The absence of documentation about point source discharges in Bear Creek has adversely affected EPIC's operations and ability to achieve its organizational goals. Time, money and resources have been spent attempting to obtain water quality information which, pursuant to the NPDES permitting program, should have been relatively simply to obtain and review. This would include monitoring reports, pollution control plans, and monitoring plans. I would estimate that EPIC has spent at least 2,000 hours of staff time, tens of thousands of dollars and foregone addressing numerous other environmental concerns and issues in order to gather information and pursue alternative strategies partially as a result of the absence of information required by the Clean Water Act.

8. In addition, EPIC's participation before the Regional Board in water quality proceedings relating to Bear Creek likely was undermined by the absence of monitoring and reporting documents that

might have supported EPIC's positions before that agency. Perhaps most importantly, the absence of such point source information undermined EPIC's ability to educate not only the agencies but its members as well, preventing EPIC's members from fully understanding the pollutant discharge levels in Bear Creek and the potential pollution reductions achievable by Pacific Lumber.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 31st day of July 2006 in Sacramento, California.

_____Paul Mason